IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CHEMICAL COMPANY,

        Plaintiff,                          Case Number 07-12012-BC
                                                Honorable Thomas L. Ludington

v.

J. PEDRO REINHARD,
ROMEO KREINBERG,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT KREINBERG'S MOTION TO DISMISS
AND DISMISSING COUNTS III & V OF PLAINTIFF'S AMENDED COMPLAINT
AS TO DEFENDANT KREINBERG**

On May 8, 2007, the plaintiff, Dow Chemical Company (Dow Chemical), filed suit against the defendants, J. Pedro Reinhard, who served as a member of its board of directors at the time of his termination, and Romeo Kreinberg, who served as one of its executive vice presidents at the time of his termination. In its amended complaint, Dow Chemical alleges claims of breach of fiduciary duty and breach of contract. Dow Chemical also requests declaratory judgment as to the parties' respective obligations under certain equity awards contracts and as to Dow Chemical's obligations under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, including providing COBRA[1] notice to the defendants. Now before the Court is Kreinberg's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

I.

Kreinberg served most recently as an executive vice president at Dow Chemical, until the

---

[1] The Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161 *et seq.,* provides for notice of health care continuation coverage.

company ended his employment on April 12, 2007. According to Dow Chemical's amended complaint, Kreinberg joined Dow Chemical in 1977, holding a variety of leadership positions in Europe and, most recently, serving as an executive vice president and a member of Dow Chemical's executive leadership committee.

Dow Chemical alleges that Kreinberg's roles made him intimately familiar with strategic corporate decisions and gave him access to sensitive, proprietary, and confidential information. Dow Chemical further claims that he also had a material role in formulating corporate policy and strategy. Dow Chemical maintains that these positions imposed on Kreinberg fiduciary duties, including those of candor and undivided loyalty.

Indeed, Dow Chemical claims that it commenced a "new strategic initiative" in July 2006, and, according to Dow Chemical, Kreinberg had a key role in the execution of that plan. Dow Chemical alleges that, shortly thereafter, reports began to circulate that Dow Chemical would be involved in a major transaction. According to Dow Chemical, those "press reports clouded [its] future, distracted [it] from its business objectives, and roiled its management and employees. Accordingly, Dow [Chemical] began an effort to assuage these negative effects on Dow [Chemical]'s business, determine the source of these rumors, and assess their validity." Am. Cplt., ¶ 21 [dkt #4].

Three newspaper articles, dated January 18, 2007, February 25, 2007, and March 12, 2007, reported the possibility of a break-up bid for and/or a leveraged buyout of Dow Chemical. Dow Chemical alleges that Kreinberg knew of these reports, but that he did not inform Dow Chemical of any information that he might have had about these rumors. *Id*. at ¶¶ 23, 24, 26, 28. Dow Chemical states that it sought to establish the possible basis for and source of these rumors by

inquiring within the investment banking and financial community.

Although these rumors were allegedly discussed at two board meetings (on February 14, 2007 and March 16, 2007), Dow Chemical maintains that Kreinberg did not indicate that he had any knowledge of these potential transactions. Dow Chemical asserts that Kreinberg responded to an employee's e-mail inquiry about one of these articles as follows, "E se non evero, e ben trovato. Which means in [I]talian, if its not true its well invented." *Id*. at ¶ 30 (punctuation as in amended complaint).

On April 8, 2007, another newspaper article reported that a buyout of Dow Chemical could be nearing completion. Dow Chemical asserts that within 48 hours of that story's publication, a major financial institution shared information with Dow Chemical regarding these potential transactions. Dow Chemical claims that, on April 9, 2007, it issued a press release denying any discussions of a leveraged buyout. Dow Chemical alleges that Kreinberg did not volunteer any information at this point. *Id*. at ¶¶ 34, 36.

Dow Chemical maintains that, on that same date, its chief executive officer (CEO), Andrew Liveris, met with the CEO of a financial institution. The financial institution's CEO related that the London affiliate of his institution was working on behalf of Middle Eastern investors on a variety of potential transactions regarding Dow Chemical, including a purchase of the entire entity. He also conveyed that persons close to Dow Chemical were involved in the discussions. According to Dow Chemical, on April 10, 2007, the financial institution's CEO contacted Liveris to identify Kreinberg as one of the Dow Chemical employees involved in discussions with third parties and with the financial institution about the possible buyout.

Dow Chemical alleges that, on April 11, 2007, Liveris shared this information with Dow

Chemical's presiding director and the chair of the audit committee. At a board meeting that day, board members unanimously agreed on the credibility of the information and to terminate the Kreinberg's employment.

Dow Chemical claims that, on April 12, 2007, Liveris, along with others, met separately with Reinhard and then with Kreinberg. Both allegedly denied the allegations and provided no explanation. Dow Chemical states that Kreinberg's employment was terminated and that the executive committee of the board then voted to remove him as an officer.

Dow Chemical recites that, under contracts made pursuant to an award and option plan from 1988,[2] it provides awards of stock options, performance awards, deferred stock, and dividend units. According to Dow Chemical, the plan provides for its compensation committee to interpret and administer the plan. Dow Chemical further states that these equity awards contracts terminate at the end of employment and provide for terminating a benefit under the agreement, if the party engages in any activity harmful to the interests of Dow Chemical. Similar provisions apply to its dividend unit plan, according to Dow Chemical. Finally, Dow Chemical asserts that the equity awards contracts provide for prompt repayment of benefits received under them, if the compensation committee determines that a party has engaged in activity harmful to the interests of Dow Chemical.

Dow Chemical states that its compensation committee did not conclude that Kreinberg had retired from Dow Chemical. It alleges that it authorized its employees to take steps to freeze,

---

[2]A plain reading of the amended complaint leaves some ambiguity as to the relationship between the 1988 plan and particular agreements that result in particular awards. At this stage of the proceedings, it suffices to say that Dow Chemical has alleged that common language and common decisions govern the propriety of these awards. Accordingly, the Court will here refer collectively to the "equity awards agreements," although subsequent discovery and filings may clarify the relevance of and distinctions between, if any, the 1988 plan and related agreements.

terminate, or reclaim remuneration and benefits previously awarded to Kreinberg. According to Dow Chemical, at the time of his termination, Kreinberg had an estimated $15 million in outstanding equity awards and had realized an estimated $5 million in the three years prior to the end of his employment with the company. Dow Chemical further asserts that Kreinberg forfeited benefits under an ERISA plan, of which Dow Chemical is the plan administrator, and that he forfeited coverage under COBRA.

To reiterate, Dow Chemical filed suit against its former employees,[3] alleging claims of breach of fiduciary duty and breach of contract. Dow Chemical also seeks, for purposes of this motion, declaratory judgment regarding Kreinberg's obligations under the equity awards contracts, Dow Chemical's obligations under the equity awards contracts, and regarding the parties' respective obligations as to an ERISA plan, including Dow Chemical's obligations to provide COBRA notice.

II.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure, which allows for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."

---

[3]Two other cases, allegedly arising out of the same set of circumstances, were filed on the same day. Kreinberg filed suit in state court in New York, and Dow Chemical then removed the case to federal court. Reinhard filed suit in federal court in New York. Both of those cases have subsequently been transferred to the Northern Division of the United States District Court for the Eastern District of Michigan. *See* 07-13235-BC, *Kreinberg v. Dow Chemical Co., Liveris*; 07-13581-BC, *J. Pedro Reinhard v. Dow Chemical Co., Liveris*.

In 07-13235-BC, *Kreinberg v. Dow Chemical Co., Liveris*, Dow Chemical filed a counterclaim that mirrors its claims here. Kreinberg there brought a motion to dismiss on grounds similar to those he advances here. A separate opinion and order will address that motion on grounds similar to those discussed here.

*Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). In *Twombley*, 127 S.Ct. at 1965, the Supreme Court continued, "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

Kreinberg argues that the Court should apply Federal Rule of Civil Procedure 9(b) for the heightened pleading requirement required in actions for fraud to the claim of a breach of fiduciary duty. He seeks to recharacterize Dow Chemical's claim as one for fraud, citing to the amended complaint's "deception and betrayal" language.

Although a party might conceivably apply a label other than "fraud" to fraudulent conduct, as described in *Rogers v. Baxter International, Inc.*, 417 F.Supp.2d 974, 984 (N.D. Ill. 2006), the

instant case does not require the heightened pleading requirement for a claim of fraud. Dow Chemical's amended complaint alleges a generalized breach of fiduciary duty and specifically notes the duties of loyalty and candor. Also, the amended complaint maintains that Kreinberg, according to the financial institution's CEO, engaged in unauthorized discussions regarding the sale of Dow Chemical with third parties. Consequently, a failure to disclose does not represent the sole theory of Dow Chemical's breach of fiduciary duty claim. As such, Kreinberg may not recharacterize Dow Chemical's claim for it, so as to insist on a higher pleading standard. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (describing the plaintiff as the master of the complaint). Thus, Plaintiff's complaint need only meet the requirement, under Rule 8(a), of a short and plain statement showing entitlement to relief.

### III.

A first principle of the law addressing corporate governance is that corporations exist to maximize value for their owners, the shareholders. *See* Principles of Corporate Governance: Analysis and Recommendations § 2.01 (American Law Institute 1994, updated 2007). Shareholders, however, do not directly manage the corporation. *See* Principles of Corporate Governance § 3.01; Del. Code tit. 8, § 141(a), (k). Shareholders elect a board of directors, and the board of directors then undertakes the responsibility to manage the corporation on behalf of the shareholders. *See* Model Business Corporation Act (MBCA) § 8.01(b). The board of directors, in turn, selects officers who implement the strategies the board best believes serve the interests of the company's shareholders. *See* Principles of Corporate Governance §§ 3.01, 3.02; MBCA §§ 8.40, 8.41; Del. Code tit. 8, § 142(b). In this way, a corporation's board of directors, officers, and employees, each in their respective capacities, act to advance the interests of the shareholders. *See generally* Lyman

P.Q. Johnson and David Millon, Recalling Why Corporate Officers Are Fiduciaries, 46 Wm. and Mary L. Rev. 1597, 1605-1609 (2005).

A. Claim of Breach of Fiduciary Duty

In order to advance the American legal model of corporate governance, the law presumes that directors and officers of a corporation have unique obligations to further the interests of the corporation generally and its owners specifically. In *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939),[4] the Delaware Supreme Court described the fiduciary duties of directors and officers:

> Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders. A public policy, existing through the years, and derived from a profound knowledge of human characteristics and motives, has established a rule that demands of a corporate officer or director, peremptorily and inexorably, the most scrupulous observance of his duty, not only affirmatively to protect the interests of the corporation committed to his charge, but also to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or to enable it to make in the reasonable and lawful exercise of its powers. The rule that requires an undivided and unselfish loyalty to the corporation demands that there shall be no conflict between duty and self-interest. The occasions for the determination of honesty, good faith and loyal conduct are many and varied, and no hard and fast rule can be formulated. The standard of loyalty is measured by no fixed scale.

At present, Delaware law does not differentiate between the fiduciary duties of directors and officers. 1-14 Delaware Corporation Law and Practice § 14.02 (2006); *but see In re the Walt Disney Co. Litigation*, Unpublished Docket No. 15452; 2004 Del. Ch. Lexis 132, *14 (Del. Ch. 2004) (noting that no such distinction has been made to date).

---

[4] No party, at this juncture, disputes that Delaware law governs, given that the law of the state of incorporation generally governs issues pertinent to a corporation's internal affairs. *See First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (citing Restatement 2d of Conflict of Laws § 302 (1971)); *Atherton v. Federal Deposit Insurance Corp.*, 519 U.S. 213, 223-224 (1997).

Delaware law treats the duties of directors and officers as a triad of duties of good faith, loyalty, and due care. *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1164 (Del. 1995). Good faith is best shown by its absence, such as by an intentional act contrary to law or to the best interests of the corporation or by an intentional failure to act in the face of a known duty to act, which shows a disregard for a director's duties. *See Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006) (citations omitted); *but see Orman v. Cullman*, 794 A.2d 5, 14 n.3 (Del. Ch. 2002) (treating good faith as a subsidiary requirement of loyalty) (citation omitted). "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Due care requires directors and officers to act on an informed basis. *Id.* at 367.

In *Hollinger International, Inc. v. Black*, 844 A.2d 1022, 1060-1062 (Del. 2004), an investment institution contacted a director of a company to explore a potential purchase of an asset of the company. Instead of directing any such proposal through a board-approved consideration process, the director, *inter alia*, diverted the opportunity to himself, mislead his co-directors about his conduct, did not disclose his dealings with the investment institution, and used confidential corporate information to advance the director's and not the company's interests. *Id.* at 1061-1062. The court found this conduct incompatible with a duty of loyalty. *Id.* at 1062; *see also HMG/Courtland Properties, Inc. v. Gray*, 749 A.2d 94, 119 (Del. 1999) (stating that directors have "an 'unremitting obligation' to deal candidly with their fellow directors") (citation omitted). This duty carries with it the obligation to disclose any interest a director may have in a transaction. *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150, 181 (Del. Ch. 2005) (citation omitted).

In his brief here, Kreinberg devotes substantial argument to the legal standards applicable to a duty to disclose. Kreinberg's argument is misplaced, because he assumes that Dow Chemical only alleges a breach of fiduciary duty on that basis. That assumption does not accurately reflect the complaint, which also asserts that he participated in unauthorized discussions about the possible sale of the company. Additionally, Kreinberg's argument incorrectly separates a duty to disclose into its own discrete breach, rather than treating it as one manner by which a breach of a duty of loyalty could occur. For instance, Kreinberg cites to *Chiarella v. United States*, 445 U.S. 222, 228 (1980), for the proposition that fraud based on a failure to disclose only occurs when a person is under a duty to disclose. Yet Kreinberg overlooks the Court's next statement, which describes how a duty to disclose arises from the existence of a fiduciary relationship. *Id*. Kreinberg's discussion of the materiality of the content of disclosure or whether the complainant already had knowledge of the information not disclosed, *see Solomon v. Armstrong*, 747 A.2d 1098, 1131 (Del. Ch. 1999),[5] then ceases to be relevant at this stage of the proceedings.

Here, the breadth of the obligation placed on directors and officers leaves room for the allegations against Kreinberg to support a claim of a breach of fiduciary duty to its management and its board of directors. Dow Chemical maintains that Kreinberg did not provide information of which he was aware about a potential offer for the company. More importantly, Dow Chemical alleges that

---

[5]For similar reasons, Kreinberg's interest in cases such as *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 917 (Del. Ch. 1999), which required pleading causation and quantifiable damages in a shareholder action for nondisclosure, is not informative in a case that does not necessarily involve nondisclosure (and that certainly does not involve shareholders). To the extent that Dow Chemical must allege injury and causation, it has done so by stating that it devoted efforts to identifying the source and content of rumors about the buyout, that those rumors affected its corporate health, and that Kreinberg failed to reveal information he had about those rumors or his participation in the events that drove them.

he participated – without authorization – in discussions about a potential offer for the company. If true, it seems difficult to conclude that he did not breach his duty of loyalty to his management and the company's board, similar to the defendant in *Hollinger International*, or to conclude that he met his "unremitting obligation" to deal candidly with the corporation's directors, as in *HMG/Courtland Properties* or *Benihana International*. Here, if Dow Chemical succeeds in proving the truth of its allegations, then a corporate officer would not have advised the board of and participated in third parties' efforts to set a new trajectory for the company, rather than permitting the board to set corporate policy in a fully informed manner. Instead of the board of directors assessing and determining how to maximize shareholder value, if Dow Chemical's allegations prove true, Kreinberg explored an avenue toward that end without the input of the board of directors of the corporate entity to which he answered.

Construing the amended complaint in favor of Dow Chemical and accepting its allegations as true, for purposes of this motion, Kreinberg has not shown that Dow Chemical is unable to prove a set of facts on which it would be entitled to relief. Also, Dow Chemical has provided more than conclusory labels and factual allegations as required by *Twombley*. For example, the allegation that Kreinberg participated in discussions about a possible buyout raises Dow Chemical's assertions above mere speculation. Thus, the Court will deny Kreinberg's motion to dismiss as to count I, the claim of a breach of fiduciary duty.

### B. Claim of Breach of Contract

Under Delaware law, a claim of breach of contract requires a showing of the following elements: (1) the existence of the contract, either express or implied; (2) a breach of an obligation under that contract; and (3) damage to the plaintiff from that breach. *VLIW Technology, L.L.C. v.*

*Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003) (citation omitted).

Here, Dow Chemical alleges the existence of a variety of contracts governing equity awards. Although Dow Chemical does not provide the precise contract language from the several contracts that it alleges similarly govern these awards over time, it does maintain that its complaint includes representative samples of the language at issue. Dow Chemical further asserts that the contract requires prompt repayment of awards issued under those contracts, if the compensation committee determines that a party to the contract has taken an action contrary to the interests of Dow Chemical. Beyond that, Dow Chemical claims that its compensation committee determined that Kreinberg took action contrary to Dow Chemical's interests, that the contracts reserved total discretion on that point to the compensation committee, and that Dow Chemical was injured by Kreinberg's failure to promptly repay amounts allegedly due back to Dow Chemical.

As with the claim of a breach of fiduciary duty, Dow Chemical's amended complaint does "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations and internal quotations omitted). Because Kreinberg has not shown that no set of facts exists on which relief could be granted to Dow Chemical, the Court will deny Kreinberg's motion to dismiss as to count II, the claim of a breach of contract.

### C. Requests for Declaratory Judgment

The Declaratory Judgment Act (DJA), in 28 U.S.C. § 2201(a), provides:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

"The general tests applied in determining whether to exercise jurisdiction in a declaratory judgment action are whether the judgment will serve a useful purpose in clarifying and settling the legal relationships in issue and whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. Surety Co. v. Sunshine Corp.*, 74 F.3d 685, 687 (6th Cir. 1996) (citations and internal quotations omitted).

In *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000), the Sixth Circuit outlined the factors for assessing the propriety of a federal court's exercise of discretion in such a situation:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

(Citations omitted).

Most importantly, a court's discretion to issue a declaratory judgment under the DJA does not and, indeed, cannot permit a court to render an advisory opinion in the absence of an actual case or controversy under Article III of the Constitution. 12 Moore's Federal Practice 3d § 57.22[1] (2006). Also, the DJA does not separately create jurisdiction; rather, a federal court must already have jurisdiction on some independent basis. *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007).

As to counts III and IV, Dow Chemical's requests for declaratory judgment as to the parties' respective obligations under the equity awards contracts, Kreinberg argues that this avenue of relief duplicates that in count II, a claim for breach of contract. As such, Kreinberg contends that

declaratory judgment is redundant, because the claim of breach of contract will dispose of the issues of the parties' respective obligations.

Dow Chemical counters that its count IV and its prayer for relief specifically request a decision concluding that Dow Chemical has no further obligation to Kreinberg under the equity awards contracts. The breach of contract claim, then, would not be duplicative because resolution of that issue could not address the matter of Dow Chemical's obligations, if any.

Dow Chemical's argument overlooks the possibility that count III – declaratory judgment as to Reinhard and Kreinberg's obligations under the equity awards plan – is duplicative of a claim for breach of contract. Count III can be separately dismissed, while still permitting Dow Chemical to seek declaratory judgment as to its own future obligations, if any, under the equity awards contracts.

As Dow Chemical correctly contends, however, its prospective obligations under those contracts would go undetermined by a disposition of a claim for breach of contract. Although the claim of breach of contract would resolve one basis for dispute between Dow Chemical and Kreinberg, the precise terms of the contracts at issue have not yet been presented to the Court. The particular terms of the equity awards contracts might impose, for example, future obligations on Dow Chemical, independent of any breach. Alternatively, the equity awards contracts might include a provision regarding compensation earned prior to any purported breach which may result in a vested benefit. Without access to the terms of the equity awards contracts at this juncture in the proceedings, the Court cannot conclude that there is no set of facts exists in which Dow Chemical has a separate set of obligations to Kreinberg under the equity awards contracts, regardless of any breach of contract. Thus, unlike count III, the factors identified in *Scottsdale*, do not militate in

favor of dismissing count IV.

Applying those factors, declaratory judgment regarding the parties' obligations under the equity awards contracts would likely settle the controversy. Yet a determination of liability on the breach of contract claim would do the same, but it could not settle Dow Chemical's prospective obligations, if the contract terms imposed separate such obligations. Next, to the extent that a declaratory judgment duplicated the result of another claim, such a judgment would not serve a useful purpose in clarifying the legal relations at issue. That is, a declaratory judgment regarding Kreinberg's obligations under the contracts would not improve on a determination of Kreinberg's liability for a purported breach of contract. In contrast, a declaratory judgment regarding Dow Chemical's obligations under the contracts might, depending on the terms of the contracts, differ from the disposition of a breach of contract claim and, thus, could clarify the legal obligations of the parties further.

Whether these declaratory judgment requests serve a disapproved procedural tactic or implicate any concern for respect for state courts is not apparent at this juncture. Yet neither seem likely in litigation that can proceed in federal court based on diversity jurisdiction under 28 U.S.C. § 1332.

Further, as with the first two factors, it does seem likely that an alternative remedy, i.e., Dow Chemical's claim for breach of contract, is a better and more effective mechanism for addressing the issues presented in count III. The possibility of some overlap between counts II and IV, however, does not require that Dow Chemical exclusively pursue either a claim of breach of contract or a request for declaratory judgment regarding Dow Chemical's prospective obligations under the equity awards contracts. Although similar findings of fact and conclusions of law may largely

govern the outcome of both, the potential for different remedies prevents count II from being a true alternative to count IV. That is, without more information about the content and structure of the equity awards contracts, the Court cannot now conclude that any purported breach by Kreinberg will exactly correspond to a determination of the prospective obligations of Dow Chemical to him, if any. Consequently, the Court will grant Kreinberg's motion to dismiss as to count III but deny his motion to dismiss as to count IV, which involves Dow Chemical's prospective obligations under the equity awards contracts.

Finally, the Court will consider count V, Dow Chemical's request for declaratory judgment as to its obligation to Reinhard and Kreinberg under ERISA to, *inter alia*, provide notice of coverage under COBRA. Generally, COBRA benefits permit an employee to elect to continue health care coverage for, usually, 18 months after a qualifying event, such as the end of employment. *See* 29 U.S.C. § 1162(2). The employer may require the former employees to pay a premium for the continuation of coverage. 29 U.S.C. § 1162(3). The statute also sets out the requirements for providing notice of COBRA benefits after termination of employment and particularly provides for the timing of that notice. 29 U.S.C. § 1166. Exempted from the qualifying events that require notice of benefits, however, is the termination of employment for "reason of [an] employee's gross misconduct." 29 U.S.C. § 1163(2). In its amended complaint, Dow Chemical states that it did not provide COBRA notice to Kreinberg.

Kreinberg argues that no actual controversy exists, because he has not challenged Dow Chemical's election not to provide him notice of his COBRA benefits. Dow Chemical responds that these facts are not hypothetical but anticipate Kreinberg's contention that he did not engage in gross misconduct, which is Dow Chemical's basis for declining to provide him COBRA notice.

As previously noted, the DJA does not independently confer federal subject matter jurisdiction, and a court cannot issue an advisory opinion under the DJA, absent an actual case and controversy. As the Supreme Court reiterated in *MedImmune, Inc. v. Genentech, Inc.*, ___ U.S. ___; 127 S.Ct. 764, 771 (2007), "[T]he dispute [must] be definite and concrete, touching the legal relations of parties having adverse legal interests; and [must] be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (Citations and internal quotations omitted). Dow Chemical has not here identified any basis on which it faces a coercive dilemma that requires it to choose between rights and the risk of prosecution, such as the cost and expense of a patent enforcement action anticipated by the plaintiff in *MedImmune*. Instead, Dow Chemical may yet face a claim from Kreinberg – if he chooses to challenge its election not to provide him notice of his COBRA rights. The events that would permit Kreinberg to advance such a claim have, seemingly, already transpired. In contrast, the central event that would transform that issue into a case or controversy – that Kreinberg disputes Dow Chemical's election not to provide him notice of the opportunity to continue his health care coverage – has not.

Accordingly, Dow Chemical's count V presents the Court with a request for declaratory judgment over which the Court has no jurisdiction, because Dow Chemical seeks a determination of rights based on a hypothetical situation that has not yet occurred. The Court will consequently grant Kreinberg's motion to dismiss as to count V as to Kreinberg, the request for declaratory judgment as to Dow Chemical's COBRA notice obligations.

IV.

For the foregoing reasons, the Court will grant in part and deny in part Kreinberg's motion

to dismiss, granting dismissal as to counts III and V but permitting counts I, II, and IV to remain.

Regarding count I, Dow Chemical alleges that Kreinberg participated in discussions about a possible buyout of the company and failed to disclose information he had about those discussions. If true, as the Court must assume on a motion to dismiss, Kreinberg would have violated his fiduciary duties as described in *Guth v. Loft*, 5 A.2d 503 (Del. 1939).

Regarding count II, Dow Chemical alleges that Kreinberg failed to promptly repay monies previously issued after its compensation committee determined that he had acted contrary to Dow Chemical's interests. If true, as the Court must assume on a motion to dismiss, Kreinberg would have breached his contract with Dow Chemical.

In counts III and IV, Dow Chemical seeks declaratory judgment regarding Kreinberg's and Dow Chemical's separate obligations under the equity awards contracts. Because declaratory judgment as to Kreinberg's obligations would result in the duplication of any disposition of the claim of a breach of contract, declaratory judgment on that point would not further clarify the legal relationship between the parties, as required by 28 U.S.C. § 2201, in light of *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000). Yet declaratory judgment as to Dow Chemical's obligations under those same contracts, depending on the terms of those contracts, might involve prospective obligations on Dow Chemical that differ from any determination of liability (if any) for a breach of contract. Thus, declaratory judgment as to count IV could yet clarify the legal relationship between the parties, so count IV will remain while count III is dismissed.

In count V, Dow Chemical seeks declaratory judgment regarding its obligations under ERISA to provide Kreinberg with notice regarding COBRA benefits. No case or controversy exists under Article III of the United States Constitution to support Dow Chemical's request for

declaratory judgment on this point, because Kreinberg has not yet challenged for any purported failure of notice.

Accordingly, it is **ORDERED** that Kreinberg's motion to dismiss [dkt #15] is **GRANTED IN PART** and **DENIED IN PART**. Counts III and V of Dow Chemical's amended complaint are **DISMISSED** as to Kreinberg.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 20, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 20, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS