IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CHEMICAL COMPANY,

        Plaintiff,                              Case Number 07-12012-BC
                                                  Honorable Thomas L. Ludington

v.

J. PEDRO REINHARD,
ROMEO KREINBERG,

        Defendants.

-and-

J. PEDRO REINHARD,
ROMEO KREINBERG,

        Counterclaimants,

v.

DOW CHEMICAL COMPANY,
ANDREW N. LIVERIS,

        Counterdefendants.

-and-

J. PEDRO KREINBERG,

        Third-Party Plaintiff,

v.

J.P. MORGAN CHASE AND COMPANY,

        Third-Party Defendant.
_____/

**ORDER GRANTING J.P. MORGAN CHASE AND COMPANY'S MOTION
TO DISMISS KREINBERG'S THIRD PARTY COMPLAINT,
DISMISSING WITH PREJUDICE KREINBERG'S THIRD PARTY COMPLAINT,
DISMISSING JPMC AS A THIRD PARTY DEFENDANT,**

**DENYING KREINBERG'S MOTION FOR LEAVE TO SUPPLEMENT
HIS RESPONSE TO JPMC'S MOTION TO DISMISS,
AND DENYING JPMC'S MOTION TO STAY DISCOVERY**

On February 11, 2008, the Court held a hearing to address three pending motions in this case, which involves the termination of the employment of the defendants, J. Pedro Reinhard and Romeo Kreinberg, by the plaintiff, Dow Chemical Company (Dow Chemical). Those motions include the following: (1) J.P. Morgan Chase and Company's (JPMC) motion to dismiss Kreinberg's third party complaint against JPMC, under Federal Rule of Civil Procedure 12(b)(2) & (6) [dkt #54]; (2) Kreinberg's motion to supplement his response to JPMC's motion to dismiss [dkt #94]; and (3) JPMC's motion to stay discovery as to JPMC, pending the disposition of its motion to dismiss [dkt #113].

The Court will grant JPMC's motion to dismiss Kreinberg's third party complaint, although only on the basis of its challenge under Federal Rule of Civil Procedure 12(b)(6). As to JPMC's challenge to the existence of personal jurisdiction, the Court will deny the motion. Additional discovery to investigate jurisdictional facts, given the demonstration of communications across JPMC's corporate boundaries, is warranted to resolve whether JPMC had sufficient contacts with Michigan to establish personal jurisdiction over it. As to JPMC's challenge that Kreinberg failed to state a claim on which relief can be granted, the Court will grant the motion. Michigan law bars Kreinberg's claim of contribution against JPMC. Further, the Court will deny as moot the two associated motions, Kreinberg's motion to supplement his response to JPMC's motion to dismiss and JPMC's motion to stay discovery as to JPMC, pending the disposition of the instant motion to dismiss.

# I. Factual Allegations

Dow Chemical filed an amended complaint against Reinhard and Kreinberg on May 16, 2007, alleging, *inter alia*, breach of fiduciary duty. Regarding Kreinberg, Dow Chemical alleged that, over the course of more than 30 years, he rose to the position of one of its most senior and trusted executives, serving most recently as an executive vice president and on Dow Chemical's executive leadership committee. On October 12, 2007,[1] Kreinberg filed his third party complaint against JPMC. There, he asserts a single claim of contribution against JPMC, predicated on Dow Chemical's claim against him for breach of fiduciary duty. Generally, without broaching the discussion of conflict of laws addressed below, contribution means that a tortfeasor has a right to collect from others responsible for the same tort after the tortfeasor pays more than his or her proportionate share.[2] Thus, Kreinberg seeks to require JPMC to contribute to any judgment against him, should a jury find him liable to Dow Chemical for a breach for fiduciary duty.

Although a court's review of a motion to dismiss is generally limited to a complaint's pleadings, both JPMC and Kreinberg have filed extensive additional documentation with their briefs. For instance, JPMC provides its Securities and Exchange Commission Form 10-K for 2006 (SEC 10-K)[3] and the affidavit of its assistant general counsel and assistant general secretary, which

---

[1]Kreinberg, pursuant to his interpretation of a stipulated protective order entered on August 14, 2007, filed his third party complaint under seal. In light of Kreinberg's pending motion to unseal his third party complaint, filed on January 22, 2008, the Court will not here address whether the protective order required him to file his third party complaint under seal. The Court will discuss Kreinberg's third party complaint, however, to the extent necessary to resolve JPMC's motion to dismiss it. Additionally, on January 22, 2008, Kreinberg filed an unredacted version of his third party complaint, but not the exhibits referenced in his October 12, 2007 filing.

[2]Black's Law Dictionary (8th ed. 2004).

[3]JPMC Mot. to Dismiss Kreinberg's 3d Party Cplt., Ex. 2-C [dkt #54].

describes JPMC's corporate structure and contacts with Michigan. Kreinberg provided materials responsive to those jurisdictional allegations, as well as other materials. The Court will limit its inquiry, as well as the subsequent recitation of factual allegations, to the pleadings and to facts relevant to considering the existence of personal jurisdiction, as required by the standard of review on a motion under Federal Rule of Civil Procedure 12(b)(2) & (6).

## A. Kreinberg's Third Party Complaint

Kreinberg contends that JPMC began discussions with foreign investors regarding the acquisition of Dow Chemical in late 2006. He maintains that, although JPMC had a long-standing relationship as a financial adviser to Dow Chemical, JPMC did not disclose those efforts to Dow Chemical.

According to JPMC's SEC 10-K of 2006, JPMC is a financial holding company, with several subsidiaries. These subsidiaries include JPMorgan Chase Bank, N.A., a national banking association; Chase Bank USA, N.A., a national banking association; and J.P. Morgan Securities, Inc., a United States investment banking firm. These subsidiaries "operate nationally as well as through overseas branches and subsidiaries, representative offices and subsidiary foreign banks." JPMC Mot. to Dismiss Kreinberg's 3d Party Cplt., Ex. 2-C [dkt #54]. In materials used to pitch a possible business transaction, the following description appears:

> JPMorgan is a marketing name for investment banking businesses of JPMorgan Chase & Co. and its subsidiaries worldwide. Securities, syndicated loan arranging, financial advisory and other investment banking activities are performed by a combination of J.P. Morgan Securities, Inc., J.P. Morgan plc, J.P. Morgan Securities Ltd. and the appropriately licensed subsidiaries of JPMorgan Chase & Co. in Asia-Pacific, and lending, derivatives and other commercial banking activities are performed by JP Morgan Chase Bank, N.A. JPMorgan deal team members may be employees of any of the foregoing entities.

Kreinberg Rs., Decl., Ex. 4 [dkt #79]. An entity bearing the name "JPMorgan" operates an office

in Detroit, Michigan, and Kreinberg provided a declaration stating that JPMorgan Chase Bank, N.A. operates over 200 branches in Michigan. *Id*. at Decl. ¶ 11 and Ex. 11. Additionally, a division within JPMorgan Chase Bank, N.A. recently secured as a client the Department of Treasury of the State of Michigan. *Id*. at Ex. 10.

In his third party complaint, Kreinberg states that, in January and February 2007, JPMC initiated the analysis of a transaction involving Dow Chemical. Indeed, JPMC's efforts toward a transaction involving Dow Chemical may have pre-dated 2007, as suggested by information received in discovery and attached as exhibits to Kreinberg's response. A banker at JPMorgan Cazenove, allegedly a joint venture of JPMC with a London firm, submitted a conflicts clearance form to JPMC's conflicts office on December 11, 2006, regarding a prospective buyout of Dow Chemical. *Id*. at Ex. 16. In that conflicts form, which inquires whether conflicts exist "globally," the banker advises that he has kept a member of JPMC's executive and operating committees informed of the progress of this potential transaction. *Id*.; *see also id*. at Ex. 37. The following day, the JPMC conflicts office responded via e-mail, noting that "[a] conflict exists as [JPMC] is currently advising [Dow Chemical regarding another transaction]." *Id*. at Ex. 16.

Kreinberg maintains that, notwithstanding the potential for a conflict of interest, JPMC did not reveal its work on a possible takeover to Dow Chemical. Kreinberg maintains that JPMC, instead, continued to work on the prospective transaction. Media reports circulated regarding a possible purchase of Dow Chemical, and Dow Chemical allegedly made inquiries to entities such as JPMC about the source and veracity of those rumors. For example, on February 21, 2007, an e-mail circulated to another member of the JPMC executive committee, reiterating the concern over a possible conflict of interest and also advising of the progress of the possible transaction. *Id*. at

Exs. 18, 37. That same day, the same member of the JPMC executive committee stated in a different e-mail:

> My understanding is that we were going to do some work but make no commitments here. I believe we have to have a very exhaustive discussion before we take on a more formal role here. I am incredibly uncomfortable with this as of this moment.

*Id*. at Ex. 19. On February 22, 2007, an e-mail directed to at least two members of JPMC's executive and operating committees provided an update on the project. *Id*. at Ex. 21. Also, a document or presentation slide to introduce the team working toward any deal, dated March 13, 2007, indicates that a co-CEO of "JPMorgan Investment Bank" would serve as a managing director on the transaction and that five individuals with e-mail addresses with the domain "jpmorgan.com" would serve in leadership roles. *Id*. at Ex. 17.

Kreinberg claims that JPMC then sought to ascertain the viability of a bid for Dow Chemical by meeting with managers of Dow Chemical, such as Kreinberg. He represents that, on February 27, 2007 and without advance notice to him, representatives from JPMC joined a meeting and inquired about how Dow Chemical would respond to a bid overture. He asserts that he responded unequivocally that Dow Chemical would "circle the wagons" in opposition to such a bid.

He claims that the JPMC representatives then advised their superiors that Dow Chemical management would not support the buyout under consideration. He further maintains that, although JPMC ceased its dealings with the foreign investor, JPMC continued to solicit participation by private equity groups. For instance, a letter from the banker at JPMorgan Cazenove on February 28, 2007 advised the prospective purchaser of developments in the project and indicated plans for a meeting with the co-CEO of the "global JPMorgan investment bank, as a sign of JPMorgan's support for this project." *Id*. at Ex. 24.

Kreinberg alleges that, in March 2007, another media rumor again suggested the possibility of a buyout of Dow Chemical. Kreinberg maintains that, despite JPMC's awareness of these efforts, it did not then advise Dow Chemical of them, or of the solicitation of Kreinberg's opinion on them.

According to Kreinberg, Dow Chemical's chief financial officer, Geoffrey Merszei, spoke to two bankers at JPMC, who related to him that they had worked with a client that was targeting Dow Chemical. Merszei allegedly registered his opinion that JPMC had engaged in a conflict of interest. He also purportedly expressed his sense of betrayal. He allegedly demanded that JPMC seek to win back Dow Chemical's trust by ceasing such activities.

Kreinberg asserts that, on April 9, 2007, the day after another media publication regarding a possible buyout of Dow Chemical, JPMC's chief executive officer (CEO), Jamie Dimon, and another JPMC banker traveled to Midland, Michigan. JPMC's CEO and that senior banker joined Dow Chemical's CEO, Andrew Liveris,[4] and Merszei for dinner. Kreinberg alleges that, during the course of the meal, Liveris made clear that JPMC "could curry favor by helping him implicate Kreinberg" and, so, salvage JPMC's business relationship with Dow Chemical. Kreinberg 3d Party Cplt., ¶ 51.

According to Kreinberg, on April 10, 2007, JPMC's CEO spoke with Liveris via telephone. In that conversation, JPMC's CEO allegedly advised Liveris that Kreinberg, among others, had been in communication with JPMC regarding a possible transaction involving Dow Chemical.

Kreinberg states that Liveris reported this conversation to Dow Chemical's board of directors on April 11, 2007 and that the board then voted to end Kreinberg's employment. Kreinberg asserts

---

[4]Both Reinhard and Kreinberg have named Liveris as a counterdefendant in their respective counterclaims.

that Dow Chemical purposely avoided referring to JPMC in its announcement of Kreinberg's termination.

## B. Dow Chemical's Amended Complaint

Because Kreinberg predicates his claim of contribution on Dow Chemical's claim of a breach of fiduciary duty against him, review of Dow Chemical's amended complaint is necessary to the Court's analysis. Indeed, Kreinberg cites to Dow Chemical's amended complaint in his third party complaint. There, Dow Chemical asserts that Kreinberg engaged in unauthorized discussions regarding a proposed buyout of the company and then failed to disclose those discussions to Dow Chemical's more senior management or its board of directors.

Over the span of its 26-page complaint, however, Dow Chemical does not elaborate on the precise nature of the injury that purportedly resulted from Kreinberg's alleged breach. Dow Chemical does allege that Kreinberg's conduct warranted the forfeiture of certain employee benefits. Dow Chemical Am. Cplt., ¶¶ 46-58 [dkt #4]. Indeed, Dow Chemical claims that Kreinberg was due or had previously received contractual benefits in the form of stock options, performance shares, deferred stock, and dividend units, valued at an estimated $20 million.[5] *Id*. at ¶¶ 47-56. On April 12, 2007, however, a compensation committee, whose membership is unidentified, reached a final determination that he engaged in conduct harmful to the company's interests and, so, authorized the "claw-back" of previously earned remuneration and benefits to Kreinberg. *Id*. at ¶ 55. The methodology for the "claw-back" of benefits is not included in Dow Chemical's amended complaint, nor is there any explanation of who succeeds to Kreinberg's former benefits.

---

[5]Pertinent to these allegations, Dow Chemical has also advanced a claim of breach of contract and a request for declaratory judgment as to Dow Chemical's obligations under a series of contracts providing for equity awards.

In addition to its extended reference to those contractual terms, Dow Chemical's otherwise open-ended pleadings allow for the inference that it suffered some other, more generalized injury than the allegedly unjustified payment of salary and benefits to Kreinberg. This generalized injury may be damages consequent to participation in, or even possible initiation of, a buyout transaction; this generalized injury may be the disclosure of such a potential transaction to the public or members of the media.

The greatest detail about its injury, as stated in Dow Chemical's amended complaint, appears in the following allegations: "These rumors [regarding a possible hostile takeover of Dow Chemical] were doing great damage to [Dow Chemical] and were highly disruptive. As a result of [Reinhard's and Kreinberg's] breaches of fiduciary duty, [Dow Chemical] has been damaged in an amount to be proven at trial." Dow Chemical Am. Cplt., ¶¶ 62-63 [dkt #4]. Additionally, Dow Chemical stated, "These press reports clouded [Dow Chemical's] future, distracted . . . from its business objectives, and roiled its management and employees, [requiring Dow Chemical to begin] an effort to assuage these negative effects on [its] business, determine the source of these rumors, and assess their validity." *Id.* at ¶ 21; *see also id.* at ¶¶ 23, 26, 28, 34 (characterizing the press rumors as "disruptive," "damaging," and "a matter of great concern").

Because contribution generally means (without broaching the discussion of conflict of laws addressed below) a tortfeasor's right to collect from others responsible for the same tort after the tortfeasor pays more than his or her proportionate share,[6] Kreinberg's claim of contribution

---

[6]Black's Law Dictionary (8th ed. 2004).

necessarily turns on the extent of Dow Chemical's claim against him.[7] The lack of factual particularity in Dow Chemical's allegations of the scope of Kreinberg's responsibility for its injuries, where injury is a necessary element of any tort claim, leaves the Court similarly uncertain as to the extent of damages that Dow Chemical seeks from Kreinberg alone. Correspondingly, the extent of Kreinberg's claim of contribution against JPMC – predicated on Dow Chemical's indeterminate assertion of injury resulting from a purported breach of fiduciary duty – remains necessarily imprecise.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a complaint for lack of personal jurisdiction over a party. The party asserting the existence of personal jurisdiction bears

---

[7]As outlined above, Dow Chemical's amended complaint describes its purported injury in broad terms. Some additional detail on how Dow Chemical might articulate its alleged injury appears in its response to an interrogatory from Reinhard regarding monetary damages suffered by Reinhard's alleged breach of fiduciary duty. Dow Chemical provided the following description of its alleged damages:

> [Dow Chemical] was forced to expend time and resources investigating the truth of the rumors regarding a potential hostile leveraged buyout of [Dow Chemical]; [Dow Chemical] incurred legal expenses preparing for a potential hostile bid for the company; [Dow Chemical] employees were distracted from their regular work duties by the rumors regarding a potential hostile leveraged buyout of [Dow Chemical]; [Dow Chemical's] relationships with its partners and customers was impacted by the rumors regarding a potential hostile leveraged buyout of [Dow Chemical]; [Dow Chemical] incurred increased financing costs and the market perception of [Dow Chemical's] creditworthiness was adversely affected; and [Dow Chemical's] reputation and goodwill was harmed by Mr. Reinhard's participation in the planning of a potential hostile leveraged buyout.

Reinhard Mot. to Compel Discovery, Ex. 9, Rs. to Interrog. 8, filed on November 11, 2007 [dkt #14-10 of civil case 07-13851]. Although Reinhard filed this exhibit under seal, pursuant to his interpretation of the protective order, counsel for both Dow Chemical and Reinhard referred to this interrogatory response in open court.

the burden of showing its existence. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-1262 (6th Cir. 1996) (citation omitted). A court does not weigh the contrary assertions of the party seeking dismissal under Rule 12(b)(2), and "[d]ismissal . . . is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Id*. at 1262 (citations omitted). If, however, a court holds no hearing regarding the jurisdictional facts, then the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Id*. If necessary, a court may permit a plaintiff discovery to investigate jurisdictional facts pertinent to a motion to dismiss for lack of personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this standard of review does require more than the bare assertion of legal conclusions."). In *Twombley*,

127 S.Ct. at 1965, the Supreme Court continued, "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

### III. Legal Analysis

JPMC challenges Kreinberg's complaint on two grounds. First, JPMC asserts that the Court lacks personal jurisdiction over JPMC. Second, JPMC argues that, because Michigan law applies to Kreinberg's claim of contribution, he cannot state a claim for contribution based on Dow Chemical's claim against him for breach of fiduciary duty.

### A. Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(2), JPMC contests whether the Court has personal jurisdiction over it. "Personal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Air Products & Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general, i.e., based on a defendant's systematic and continuous contacts with a state, even if those contacts do not relate to the claims at issue, or specific, i.e., based on a suit arising out of a defendant's contacts with the state. *See Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989); *Helicopteros Nacionales de Columbia, S.A. v.*

*Hall*, 466 U.S. 408, 416-418 (1984). Because of the closeness of the question regarding whether specific jurisdiction exists over JPMC, the following analysis will concentrate only on the principles involved in assessing whether specific jurisdiction exists.

A court sitting in diversity applies the law of the state in which it sits to determine whether it has personal jurisdiction over a non-resident defendant, although constitutional due process requirements still apply. *Id.* Thus, the Court must determine whether Michigan's long-arm statute, Mich. Comp. Laws § 600.715, authorizes the exercise of specific jurisdiction over JPMC and whether such an exercise of jurisdiction comports with due process. *Air Products*, 503 F.3d at 550.

Mich. Comp. Laws § 600.715 provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

At a minimum, Kreinberg's allegations support the conclusion that JPMC transacted business within Michigan and entered into a contract to perform services in Michigan. For instance, based on a 2006 summary, JPMC managed over $1.2 billion of Dow Chemical pension fund assets, processed 17% of Dow Chemical's receivable collections in North America, and was ranked by Dow Chemical as "#3 among [Dow Chemical] bank relationships." Kreinberg Rs. Decl., Ex. 34 [dkt #79]. A similar

summary follows for 2005, also reciting significant financial transactions performed by JPMC on behalf of Dow Chemical. *Id.* Thus, the exercise of personal jurisdiction comports with Michigan's long-arm statute.

The Sixth Circuit's standard for determining whether the exercise of personal jurisdiction under a state's long-arm statute meets the requirements of due process is as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co., Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Under *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), purposeful availment does not result from random, fortuitous, or attenuated contacts with the forum state. Rather, deliberately engaging in significant activities in the forum state, or creating continuing obligations there, shows how a party avails itself of the privileges of conducting business in a state and, thus, benefits from the protections of the forum state's laws. *Id.* at 475-476 (citations omitted); *see also Air Products*, 503 F.3d at 552; *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265-1267 (6th Cir. 1996).

Here, JPMC's CEO boarded a plane and flew to Michigan to address the events that culminated in Kreinberg's termination. Also, JPMC's CEO made phone calls regarding the same issues to executives at Dow Chemical. Yet these individual contacts may not, of themselves, suffice to show significant and ongoing obligations in Michigan. Kreinberg has offered documentation that members of JPMC's executive and operating committees were kept appraised of the progress of the potential buyout transaction and that an executive at "JP Morgan Investment Bank" was involved in the project plans. A person employed at JPMorgan Cazenove submitted a conflicts clearance

form to a central office at JPMC, and a JPMC executive expressed concern about the possibility of a conflict of interest. The fluidity with which this information passed through entities associated, in some manner, with JPMC creates the likelihood that the participants in the proposed transaction were officers or employees of entities that conduct business in Michigan. JPMC's SEC 10-K, which describes JPMC's subsidiaries, leaves open the possibility that entities doing business in Michigan, such as JPMorgan Chase Bank, N.A. or the "JPMorgan" office in Detroit, Michigan, are the same entities (or at least closely integrated entities) whose officers or employees participated in preparing the buyout transaction. Given this possibility and the myriad evidence provided by Kreinberg, the Court is persuaded that he has made a sufficient showing to engage in discovery to investigate further the jurisdictional facts pertinent to the issue of personal jurisdiction. *See Theunissen*, 935 F.2d at 1465 (citation omitted).

Regarding the second element of the due process test, whether the cause of action "arises from" activities in Michigan, the Sixth Circuit has characterized this as a "lenient standard." *Air Products*, 503 F.3d at 553. "This factor does not require that the cause of action formally 'arise from' [the] defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (citations and internal quotations omitted).

Even with the "lenient" standard applicable here and the requirement for Kreinberg to establish only a *prima facie* showing of personal jurisdiction, a demonstration of whether Kreinberg's claim for contribution arises from JPMC's activities in Michigan would also be enhanced through additional discovery, much like the element of purposeful availment. Entities associated with JPMC do engage in activities in Michigan. Whether any of those entities engage

in investment banking, for instance, would inform on whether a substantial connection exists to Kreinberg's claim of contribution from JPMC. The appearance that communications (if not influence and direction) extended across corporate boundaries, such as from investment banking entities to a central JPMC conflicts office, and even to JPMC officers, suggests that certain types of in-state activities might have linked Kreinberg's claim to JPMC's connections with Michigan. Given the vast and varied structure to JPMC's affiliates, further discovery would clarify whether the jurisdictional facts exist to support an exercise of personal jurisdiction over JPMC by this Court.

Finally, to comport with due process, the existence of personal jurisdiction over JPMC requires reasonableness, that is, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state." *Southern Machine*, 401 F.2d at 381. A court must then assess such factors as the following: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Products*, 503 F.3d at 554-555 (citation omitted).

Here, JPMC has little ground to argue the unreasonableness of defending an action in this district. In April 2007, its CEO allegedly arranged for a plane to this location to discuss JPMC's interests in the matter and its prospective relationship with Dow Chemical. Michigan has a substantial interest in torts that purportedly occurred within its borders and that involve corporations headquartered here. Kreinberg, too, has a substantial interest in obtaining relief for harm allegedly suffered from the dealings between JPMC and Dow Chemical. Finally, while other states may have an interest in protecting their citizens, those interests do not diminish the efficiency available by resolving this matter in Michigan.

Accordingly, the exercise of personal jurisdiction over JPMC is consistent with Mich. Comp. Laws § 600.715 and, as required by the due process inquiry, is reasonable in light of the connection of the consequences of JPMC's purported actions to Michigan. As to the other elements of the due process inquiry for exercising personal jurisdiction, purposeful availment and a claim that "arises from" activities in the forum, the Court concludes that additional discovery regarding the jurisdictional facts would be warranted. But for JPMC's argument based on Kreinberg's failure to state a claim, the Court would set parameters for that further discovery and a subsequent determination regarding the existence of personal jurisdiction over JPMC would then follow.

### B. Conflict of Laws

Under *Erie R. v. Tompkins*, 304 U.S. 64 (1938), a federal district court sitting in diversity applies the conflict of laws rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941); *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). Thus, the controlling conflict of laws principles here are those employed by Michigan.

Michigan's conflict of laws rule states that Michigan law applies "unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). To determine whether to displace Michigan law, a court must consider whether a foreign state has an interest in the application of its law and, if so, whether Michigan's interests mandate that Michigan's law applies, despite the interests of the foreign state. *Id.* (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 301 (Mich. 1987)). "If no state has . . . an interest [in the application of its law], the presumption that Michigan law will apply cannot be overcome." *Id.* Factors to be considered in assessing whether Michigan's interests have priority over the interests of a foreign state include

considerations of promoting certainty, predictability of results, ease of application, and preventing forum shopping.  *See Olmstead*, 400 N.W.2d at 302.

Here, JPMC contends that Michigan law governs, while Kreinberg contends that Delaware law governs.  JPMC is incorporated in Delaware and has a place of business in New York.[8]  The factual allegations include contact with representatives of JPMC in New York.  Thus, the jurisdictions, apart from Michigan, that might have an interest in the application of their laws are Delaware and New York.[9]

Kreinberg's third party complaint, however, substantially narrows the geographic field pertinent to a conflict of laws analysis, based on his own allegations.  There, he mentions very few geographic locations beyond Midland, Michigan.  He references the possible involvement in the purported buyout plans of the government of a foreign nation, a few English citizens, and a meeting in England.  He does state that representatives of JPMC, including its CEO, had telephone conversations with representatives of Dow Chemical, but he includes no factual allegation about the location of the JPMC officers and employees.  Next considering the geographic allegations from Dow Chemical's amended complaint, Dow Chemical there asserts that JPMC's CEO flew from New York to meet Dow Chemical's CEO in Midland, Michigan.  Although any actions taken by JPMC representatives may well have occurred in New York, no pleading so indicates.  Thus, nothing in the pleadings supports concluding that New York has any interest in these proceedings based on the

---

[8]In his third party complaint, Kreinberg does not state JPMC's state of incorporation or principal place of business, or any means of assessing its citizenship.  With its brief in its motion to dismiss, JPMC provides an affidavit that states that JPMC is incorporated in Delaware and has a place of business in New York.

[9]Kreinberg is a resident of Florida, but, as no allegation involves conduct in Florida, the Court will devote no further attention to Florida's interests.

alleged conduct.

Similarly, no allegations refer to events occurring in Delaware. Thus, Delaware's only interest is that of corporations incorporated there. Here, neither JPMC or Dow Chemical,[10] the two corporations incorporated in Delaware, seek to have the law of that state apply to Kreinberg's contribution claim. Instead, Kreinberg defends the predictability of having Delaware law govern issues pertinent to a corporation's internal affairs and suggests the irregularity of applying the law of different jurisdictions to an underlying claim and a derivative claim. *See General Motor Corp. v. Nat'l Auto Radiator Manufacturing Co., Ltd.*, 694 F.2d 1050, 1054 (6th Cir. 1982). Notably, the Sixth Circuit reached its decision in *General Motor Corp.*, without the benefit of the Michigan Supreme Court's later decisions in *Olmstead* and *Sutherland*. Still, Delaware does have an interest in the application of its law, i.e., the interest of protecting corporations incorporated under its laws.

Assuming that Delaware has that sole interest, Michigan's interests may still mandate that Michigan law applies. *See Sutherland*, 562 N.W.2d at 471. Applying the law of the state of incorporation of a third party defendant would do little to promote certainty or predictability of results. Additionally, notwithstanding the well-developed nature of Delaware law as it applies to corporations, the ease of application of Michigan law in a court situated and well-versed in Michigan law is undoubtable. Also, the consideration of forum shopping has little bearing on this analysis, where neither JPMC or Kreinberg initiated litigation in this forum. Most importantly, many of the alleged events that form the basis of Kreinberg's third party complaint occurred in Michigan, Dow Chemical's principal place of business is Michigan, and Michigan has an interest in having its law apply to injuries allegedly sustained here. Thus, Kreinberg's invocation of Delaware's interest in

---

[10]Dow Chemical has not filed a response to this motion.

internal corporate governance does not overcome Michigan's strong presumption in favor of the application of the law of the forum, particularly where Kreinberg's claim for contribution turns on JPMC's purported duty to Dow Chemical, rather than on the conduct of corporate officers.

Kreinberg also relies on the Court's previous order on September 20, 2007, in which the Court applied Delaware law when deciding his motion to dismiss Dow Chemical's complaint against him. First, Michigan courts have not foreclosed the possibility of the doctrine of depecage, by which a court may apply the law of different states to different issues in the same case. *See Olmstead*, 400 N.W.2d at 294 n.3; *Bonelli v. Volkswagen of America, Inc.*, 421 N.W.2d 213, 225 n.6 (Mich. Ct. App. 1988) (applying New York law to a contract issue and Michigan law to a tort issue). Next, JPMC's motion to dismiss Kreinberg's third party complaint repeats a posture encountered earlier in this litigation: not all parties have participated in the motion in which the choice of law arises. In the earlier motion, the court lacked the benefit of briefing by Reinhard, and in the instant motion, the Court lacks the benefit of briefing from Dow Chemical, Liveris, and Reinhard. Indeed, in the prior order, the Court observed in a footnote that all the parties to that motion assumed that Delaware law applied to those claims and did not argue to apply another state's law. Noting that fact, the Court relied on the internal affairs doctrine to conclude that the law of the state of incorporation, Delaware, governed a claim arising out of the internal affairs of a corporation. *See First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (citing Restatement 2d of Conflict of Laws § 302 (1971)). In light of Delaware's significant interest in the application of its law to the internal affairs of corporations incorporated there, *see McDermott, Inc. v. Lewis*, 531 A.2d 206, 214-218 (Del. 1987), Delaware's interests required the displacement of Michigan law in favor of Delaware's law, at least as to a corporation's claim of a breach of

fiduciary duty against a former executive.  *See Sutherland*, 562 N.W.2d at 471.  For the reasons discussed above, however, Michigan's law applies to Kreinberg's separate claim of contribution against JPMC.

## C. Contribution

As acknowledged by Kreinberg's counsel at argument, applying Michigan law forecloses Kreinberg's claim of contribution against JPMC.  The Michigan contribution statute does not permit contribution claims based on a breach of fiduciary duty.  Additionally, Michigan's tort reforms of 1995 largely eliminated contribution claims, because joint and several liability was eliminated and replaced with a mechanism for allocating fault by percentage to each person, including non-parties to the litigation.[11]

At common law, Michigan courts have described contribution as follows:

> The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the common burden or obligation, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares.

*Caldwell v. Fox*, 231 N.W.2d 46, 54 (Mich. 1975).  That common law definition has subsequently been supplanted by a statutory scheme for contribution.  *See* Mich. Comp. Laws §§ 600.2925a - 600.2925d.  Although a claim for contribution once existed at common law, "[t]he right to contribution is controlled entirely by statute."  *Isabella County v. State of Michigan, Dep't of State*

---

[11]Both parties devoted significant argument to whether JPMC bears a fiduciary duty to Dow Chemical, but the conclusion that Kreinberg cannot pursue a contribution claim against JPMC under Michigan law obviates the need to attend to those arguments.

*Police*, 449 N.W.2d 111, 112 (Mich. Ct. App. 1989).[12]

### 1. Claim of Breach of Fiduciary Duty as Bar to Contribution

The first basis for concluding that Kreinberg cannot seek contribution from JPMC derives from the express terms of Michigan's contribution statute. Mich. Comp. Laws § 600.2925a(1) and (2) define contribution as follows:

> (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
>
> (2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability.

Thus, a tortfeasor may seek contribution from a co-tortfeasor if the latter is severally liable for the same injury, even absent a judgment, when a tortfeasor has paid more than a pro rata share of common liability.[13]

A later subsection of the statute, however, bars claims of contribution for breaches of fiduciary duty. Specifically, Mich. Comp. Laws § 600.2925a(8) provides, "This section does not apply to breaches of trust or of other fiduciary obligations." *See Fidelity Deposit Co. of Maryland v. Newman*, 311 N.W.2d 821, 824 (Mich. Ct. App. 1981) ("[Mich. Comp. Laws § 600.2925a

---

[12]Notwithstanding a reference to contribution at common law, the court in *Rivet v. State Farm Mutual Automobile Ins. Co.*, 2006 WL 1738040 (E.D. Mich. 2006), concluded that the plaintiff there had no claim for contribution, relying in large part on the Michigan statutory scheme.

[13]Additionally, Michigan's "contribution statute does not include any limitation or prohibition concerning intentional tortfeasors." *Donajkowski v. Alpena Power Co.*, 596 N.W.2d 574, 577 (Mich. 1999).

renders] the statute inapplicable to suits alleging a breach of a fiduciary duty."); *see also Donajkowski v. Alpena Power Co.*, 596 N.W.2d 574, 578 n.10 (Mich. 1999) (noting the inapplicability of the statute to breaches of fiduciary duty).

Here, Kreinberg rests his claim for contribution exclusively on Dow Chemical's claim for breach of fiduciary duty. Consequently, in light of Michigan's express statutory bar, Kreinberg cannot maintain a claim against JPMC for contribution.

### 2. Statutory Bar Following 1995 Tort Reforms

In addition to the bar based on the type of contribution claim that Kreinberg seeks to assert, major tort reform legislation in Michigan in 1995 modified statutory contribution. With some exceptions not applicable here, the state legislature eliminated joint and several liability, although several liability remains. *See* 1995 Mich. Pub. Acts 161 and 249; *see generally* 2 Torts: Michigan Law and Practice §§20.2-20.7 (Linda Miller Atkinson et al. eds., 2007).

Because the statutory right to contribution applies if parties are jointly *or* severally liable, the statute does theoretically retain a possible avenue for seeking contribution. *Compare* Mich. Comp. Laws § 600.2925a(1) (providing that "when 2 or more persons become *jointly or severally* liable in tort for the same injury to a person or property . . . , there is a right of contribution among them"); *see also Gerling Konzern v. Lawson*, 693 N.W.2d 149, 156 (Mich. 2005) (emphasizing the statute's disjunctive phrasing).

The mechanism for allocating fault, under Michigan's 1995 tort reforms, however, renders it almost impossible that a tortfeasor would pay more than its pro rata share of common liability. Instead, a tortfeasor can incur an obligation to pay only the amount of damages allocated to that tortfeasor, as provided by Mich. Comp. Laws § 600.2957(1):

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

The specific methodology for allocating that fault are provided, in relevant part, by Mich.

Comp. Laws § 600.6304:

> (1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
> (a) The total amount of each plaintiff's damages.
> (b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability . . . , regardless of whether the person was or could have been named as a party to the action.
> (2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.
> (3) The court shall determine the award of damages to each plaintiff in accordance with the findings under subsection (1), . . . and shall enter judgment against each party, including a third-party defendant, except that judgment shall not be entered against a person who has been released from liability . . . .
> (4) Liability in an action to which this section applies is several only and not joint. . . . [A] person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1). . . .

Thus, the finder of fact makes specific findings regarding the percentage of fault attributable to each party, including non-parties, third party defendants, and parties released from liability. Judgment then enters according to those findings. Because liability is only several and not joint, no person is obligated to pay more than the allocated percentage of fault.

Further, because a determination of percentage of fault is made as to every potential

tortfeasor (whether a party or not), a potential tortfeasor will not have a claim for contribution

against a co-tortfeasor. Mich. Comp. Laws § 600.6304(4) directs that "a person shall not be required

to pay damages in an amount greater than his or her percentage of fault . . . ." Once the finder of fact

makes a percentage of fault allocation to a tortfeasor, the obligation to pay in excess of that amount

ceases to exist and, indeed, cannot exist. Any additional claim would be barred. Yet the existence

of such an additional claim, i.e., the requirement "to pay or satisfy the whole or to bear more than

his aliquot share of the common burden or obligation," is a necessary predicate to a contribution

claim. Moreover, this reasoning comports with the conclusion of the Michigan Court of Appeals

in *Kokx v. Bylenga*, 617 N.W.2d 368, 373 (Mich. Ct. App. 2000):[14]

> [T]o the extent that the statutes enacted as part of the Legislature's 1995 tort
> reform do not allow a person to be held responsible for paying damages beyond the
> person's pro-rata share of responsibility as determined under § 6304, claims for
> contribution are no longer viable.

*See also Gerling Konzern*, 693 N.W.2d at 152 ("[I]in an action in which an injured party has sued

only one of multiple tortfeasors and in which [the contribution statutes] apply, the tortfeasor would

have no need to seek contribution from other tortfeasors, either in that same action (by bringing in

third-party defendants) or in a separate action, because no 'person shall . . . be required to pay

damages in an amount greater than his or her percentage of [allocated] fault . . . .'") (citing Mich.

---

[14]To provide additional detail, the court there reasoned as follows:

> Thus, under the plain and mandatory language of the revised statutes, a
> defendant cannot be held liable for damages beyond the defendant's pro-rata share,
> except under certain specified circumstances. Accordingly, in actions based on tort
> or another legal theory seeking damages for personal injury, property damage, or
> wrongful death, as identified by the revised statutes, there would be no basis for a
> claim of contribution.

*Id*. at 372 (footnotes omitted).

Comp. Laws § 600.6304(4)).  Analytically, apart from the limited exception of *Gerling Konzern*,[15] the state legislature has largely eliminated claims for contribution based on several liability.

Consequently, the 1995 tort reforms in Michigan eliminated the claim that Kreinberg seeks to assert.  Absent a settlement agreement in which he pays more than his pro rata share, such as that in *Gerling Konzern*, no claim for contribution is available to him.  The unavailability of such a claim to Kreinberg, however, does not foreclose the possibility that JPMC is not responsible for any of Dow Chemical's alleged injuries.  Under Mich. Comp. Laws §§ 600.2957 and 600.6304, a non-party to the litigation could be deemed "at fault," if a jury so finds at trial.  Independent of the provision under Michigan law to identify JPMC as a non-party at fault, a possibility on which the Court makes no determination at this juncture, Kreinberg cannot sustain a claim for contribution against JPMC, as a matter of law.

Construing the factual allegations in the light most favorable to Kreinberg and accepting them as true, he cannot demonstrate a legal entitlement to the relief of contribution from a third party.  Accordingly, the Court will grant JPMC's motion to dismiss, to the extent based on Federal Rule of Civil Procedure 12(b)(6).  Because this conclusion eliminates the benefit of additional investigation into the facts pertinent to personal jurisdiction and, thus, a basis sufficient to dispose

_____

[15]In *Gerling Konzern*, 693 N.W.2d at 152-153, the Michigan Supreme Court stated, "[A]lthough the 1995 tort reform legislation may have 'rendered unnecessary' most contribution claims, this does not mean that it precludes every type of contribution claim, in particular that at issue in the instant case."  There, one defendant secured the dismissal of the case by paying a settlement agreement as to the entire complaint and then pursued a contribution claim against another defendant who did not participate in the settlement.  The court allowed a claim for contribution to proceed in the limited instance of several liability where one party, allegedly, paid more than its pro rata share pursuant to a settlement agreement.  *See also* M. Sean Fosmire, "Residual Contribution Claims after Tort Reform: The *Gerling Konzern* Case," 24 Michigan Defense Quarterly 10, 14 (Jan. 2008).

of JPMC's challenge on that ground, the Court will deny JPMC's motion to dismiss, to the extent based on Federal Rule of Civil Procedure 12(b)(2).

## IV. Conclusion

Accordingly, it is **ORDERED** that JPMC's motion to dismiss Kreinberg's third party complaint [dkt #54] is **GRANTED**. Kreinberg's third party complaint against JPMC is **DISMISSED WITH PREJUDICE**. Without addressing its potential status as a non-party at fault, JPMC is **DISMISSED WITH PREJUDICE** as a third party defendant.

It is further **ORDERED** that Kreinberg's motion for leave to supplement his response to JPMC's Motion to Dismiss [dkt #94] and JPMC's motion to stay discovery pending disposition of its motion to dismiss Kreinberg's third party complaint [dkt #113] are **DENIED** as moot.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 20, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 20, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS