IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DOW CHEMICAL COMPANY,

       Plaintiff,

v.

J. PEDRO REINHARD,
ROMEO KREINBERG,

       Defendants.

-and-

J. PEDRO REINHARD,
ROMEO KREINBERG,

       Counterclaimants,

v.

DOW CHEMICAL COMPANY,
ANDREW N. LIVERIS,

       Counterdefendants.
_____/

Case Number 07-12012-BC
Honorable Thomas L. Ludington

## ORDER DENYING KREINBERG'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

On February 13, 2008, Romeo Kreinberg filed a motion to compel a non-party, the law firm of Wachtell, Lipton, Rosen & Katz (Wachtell Lipton), to produce documents pursuant to a subpoena issued under Federal Rule of Civil Procedure 45. Dow Chemical Company, which retained Wachtell Lipton, asserts various privileges as to these documents, and it responded to Kreinberg's motion on March 11, 2008.

On April 30, 2008, the Court held a hearing on this motion, as well as other motions. Counsel for Dow Chemical and its chief executive officer (CEO), Andrew Liveris, counsel for J.

Pedro Reinhard, and counsel for Kreinberg were present at the hearing. Counsel for J.P. Morgan Chase & Company (JPMC) attended the hearing during the argument of the other pending motions but did not remain to argue the instant motion at the hearing. Nor did JPMC file a response to the instant motion, and Reinhard and Wachtell Lipton similarly did not file a response.

I.

This litigation involves the termination of the employment of Reinhard and Kreinberg by Dow Chemical on April 12, 2007. Some of the claims include breach of fiduciary duty and breach of contract, advanced by Dow Chemical, and defamation and libel, advanced by Reinhard and Kreinberg.

On February 25, 2007, in light of rumors of a potential unsolicited takeover bid for Dow Chemical, the company retained Wachtell Lipton to review "defensive options" or, as Kreinberg would suggest, mechanisms for corporate "entrenchment." Wachtell Lipton then provided Dow Chemical with advice on that subject.

On April 9, 2007, Liveris and another Dow Chemical executive met with JPMC's CEO, Jamie Dimon, and another JPMC executive. Allegedly, Dimon indicated that Reinhard and Kreinberg were participating in the activity that resulted in the rumors about a possible attempt to acquire Dow Chemical. In responses to interrogatories, Dow Chemical acknowledges that Wachtell Lipton confirmed Dimon's allegations with him. On April 10, 2007, partners at Wachtell Lipton, Martin Lipton and John Savarese, each spoke with Dimon. In each of those conversations, Dimon reiterated the content of his earlier statements to Liveris. Then Liveris and Lipton called Dimon again that same day for further confirmation.

At Dow Chemical's board meeting on April 11, 2007, Lipton presented the content of his

and Savarese's conversations with Dimon. Contrary to Kreinberg's characterization in his brief, the depositions of three board members show that, while they relied on Lipton's statements, they relied on his statements in an evidentiary capacity. That is, the testimony of three of Dow Chemical's directors, Barbara Franklin, Dr. Paul Stern, and James Ringler, supports the conclusion that they gave great weight to Lipton's representation about the facts of his communications with Dimon. Apart from a terse acknowledgment from Director Ringler that he relied, in part, on Lipton's "advice" in terminating Kreinberg,[1] *Ringler Dep.*, p. 446; Kreinberg Br., Ex. 20 [dkt #142], these directors' testimony does not show that they relied on Lipton's counsel, in his capacity as an attorney, as to how to proceed in response to the information he presented. Indeed, when asked if Director Franklin relied on Wachtell Lipton's advice when she decided to terminate Kreinberg, Franklin testified, "I'm not clear that [Wachtell Lipton] ever had – ever advised on the action with respect to [Kreinberg] or [Reinhard]." *Franklin Dep.*, p. 408; *id.* at Ex. 18. With the board's express authorization, Lipton was in the group that met with Reinhard and Kreinberg the following day on April 12, 2007, when their employment and services were terminated.

After the terminations, Liveris and Lipton jointly spoke with Dimon, seeking and receiving reaffirmation of Dimon's allegations against Reinhard and Kreinberg. Lipton also spoke with JPMC's general counsel, Stephen Cutler. In the conversation with Cutler, Lipton confirmed on Dow Chemical's behalf that any press releases would not implicate JPMC. According to Kreinberg, Wachtell Lipton has represented JPMC in the past.

---

[1] At one point, Director Ringler testified that "[Lipton's] opinion carried considerable weight in our deliberations." *Ringler Dep.* at p. 423; *id.* at Ex. 19. Yet that statement comes in the context of his description of Lipton's factual representation about his communications with Dimon.

Subsequently, as early as June 2007, the United States Securities and Exchange Commission (SEC) began to investigate possible securities law violations in conjunction with the rumors circulating about Dow Chemical. In a letter from Wachtell Lipton of June 5, 2007, Dow Chemical agreed to have its counsel provide oral briefings of certain events to the SEC, without that discussion constituting a waiver of attorney-client or work product privilege, and the SEC agreed. The language of this agreement is imprecise and does not identify which Dow Chemical representative would provide such briefings to the SEC or on what topics. The current status of this investigation is not apparent from the record provided to date.

On July 10, 2007, via subpoena, Kreinberg requested certain documents from Wachtell Lipton. Those documents included the following: (1) documents regarding responses and defenses to possible efforts to acquire the company; (2) communications to anyone other than Dow Chemical (including JPMC, the SEC, and the Department of Justice (DOJ)) about a purchase of the company; (3) communications to anyone other than Dow Chemical (including JPMC, the SEC, and the DOJ) about Kreinberg; (4) documents regarding any investigation into a purchase of Dow Chemical; (5) documents regarding any investigation of Kreinberg; (6) documents related to the facts of Kreinberg's termination, such as notes or memoranda; and (7) all agreements between Dow Chemical and anyone else (including JPMC, the SEC, and the DOJ) about exchanging information about a possible purchase of the company, Kreinberg's termination, and/or investigations into the trading of Dow Chemical's shares.

Kreinberg has now filed a motion to compel release of these documents, pursuant to Federal Rules of Civil Procedure 37 and 45. He asserts that a representation by Dow Chemical's counsel in open court constituted a subject matter waiver regarding Wachtell Lipton's advice on unsolicited

acquisitions, either generally or specifically. At a prior hearing, Dow Chemical's counsel stated that Wachtell Lipton's "verification of facts and the advice given by [it] in connection with Kreinberg's termination is an open book . . . . We are not asserting the privilege as to that." Kreinberg Mot. Br. at Ex. 5, p. 89 [dkt #142]. Read in context and with the benefit of presiding at that hearing, however, the Court concludes that Dow Chemical's counsel unambiguously asserted privilege as to any advice from Wachtell Lipton about defenses to potential attempts at an acquisition.

According to Dow Chemical, the documents that pertain to the factual information and investigation performed by Wachtell Lipton have been produced. These items include a memo by Savarese of April 11, 2007, Lipton's notes regarding the events of April 12, 2007, and minutes from Dow Chemical's board and committees meetings on April 11 and 12, 2007.

Relying on Kreinberg's and Dow Chemical's arguments and on Wachtell Lipton's privilege logs, attached as Exhibits 1 and 2 to his motion, and it appears that the documents at issue break into three categories: (1) Wachtell Lipton's advice regarding responses to a purchase; (2) Wachtell Lipton's advice about the prudence and consequence of terminating Kreinberg, based on the suggestion that Dow Chemical may contend that it took its actions based on the advice of counsel; and (3) materials that Wachtell Lipton provided to the SEC. The instant motion seeks to compel Wachtell Lipton to produce these documents, pursuant to Federal Rule of Civil Procedure 37, and Dow Chemical opposes it on the basis of privilege.

II.

A.

Federal Rule of Evidence 501 provides that federal privilege law generally governs in federal proceedings, but for a key exception applicable here. In a civil case, the law of the state that

supplies the rule of decision for a claim or defense is the law that determines applicable privileges as well. Fed. R. Evid. 501.

Here, with the exception of claims involving Reinhard under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*,[2] state law claims predominate this litigation. Relying on a previous order of the Court from September 20, 2007, Delaware law applies to the breach of fiduciary duty claims. Michigan law, however, applies to the other tort claims: breach of contract, libel, defamation, compelled self-publication, tortious interference, and requests for declaratory judgment as to contracts.

Despite Kreinberg's invocation of Delaware law on questions of privilege in this motion, no party suggests that the Court ought to apply different laws of privilege to different claims. Indeed, no party links the allegedly privileged documents to any particular claims. Most importantly, given a difference between the states' laws of privilege, the application of Michigan's law of privilege to some claims and Delaware's law of privilege to other claims could produce the incoherent result that the same communication might arguably be privileged as to one claim but not privileged as to another. *See* 6 Moore's Federal Practice 3d § 26.47[4] (2006) ("[W]hen the evidence in question is relevant to both state and federal claims, [the approach of applying different law to different claims] has been rejected on the grounds that it would be meaningless to hold the same communication privileged for one set of claims but not for the other."). Rather than permit this potential inconsistency, the Court will apply the law of privilege of the state whose claims predominate the litigation, as well as the state in which this Court sits, that is, the law of Michigan.

---

[2]Although his counsel appeared at this hearing, Reinhard made no filing and offered no argument regarding this motion.

Attorney-client privilege, however, differs from work product privilege. *See Regional Airport Authority of Louisville and Jefferson County v. LFG, L.L.C.*, 460 F.3d 697, 713 (6th Cir. 2006). This latter privilege is codified at Federal Rule of Civil Procedure 26(b)(3). *See Hickman v. Taylor*, 329 U.S. 495, 510-512 (1947). As such, Federal Rule of Evidence 501 requires that the federal law of privilege, rather than state law privilege, governs for work product privilege. *See* 6 Moore's Federal Practice 3d § 26.70[7] (2006).

B.

Michigan courts have described the attorney-client privilege as follows:

> The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice. Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication.

*Reed Dairy Farm v. Consumers Power Co.*, 576 N.W.2d 709, 711 (Mich. Ct. App. 1998) (citations omitted); *see also* Mich. Comp. Laws § 767.5a(2). This privilege aims to promote candor in communications, confidence in legal counsel, and superior advice from more complete information. *See Co-Jo, Inc. v. Strand*, 572 N.W.2d 251, 253 (Mich. Ct. App. 1997) (citation omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The protection extends only to communications with the attorney, but not to facts. That is, the communication of facts to an attorney does not thereby shield those facts from disclosure. *Fruehauf Trailer Corp. v. Hagelthorn*, 528 N.W.2d 778, 781 (Mich. Ct. App. 1995). Similarly, the communication of facts – derived from other sources – by an attorney to a client generally does not receive the protection of the privilege. *See Hubka v. Pennfield Twp.*, 494 N.W.2d 800, 802 (Mich. Ct. App. 1992), *rev'd in part on other*

*grounds* 504 N.W.2d 183 (1993) (citation omitted).

Regarding waiver of this privilege, the party seeking discovery bears the burden of establishing a waiver, and a court begins with a presumption in favor of preserving the privilege. *Howe v. Detroit Free Press, Inc.,* 487 N.W.2d 374, 383 (Mich. 1992). If discovery is allowed, then it "should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand." *Id*. The Michigan Supreme Court endorsed a waiver analysis that, based on a balancing test, can require an assertion of privilege to yield if the unavailability of the evidence will meaningfully weaken an ability to advance or defend a claim. *Id*. at 382 (citing *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire*, 838 F.2d 13 (1st Cir. 1988)). The party challenging the privilege must show the relevance and need for that information for the party's case and the lack of availability from other sources; the court will then balance those factors with the interests protected by the privilege. *See Howe*, 487 N.W.2d at 382-383.

In *Howe*, 487 N.W.2d at 383-384, the court concluded that a privilege for statements made to a probation officer did not prevent disclosure of probation records. The plaintiff, who was previously convicted of driving while impaired, sought to bar their release in a defamation case against a newspaper that referred to him as having "drinking problems." The court held that the importance of truth as a defense to a defamation claim required the release of those records, particularly where the probation records privilege did not seek to protect a plaintiff in civil litigation.

In *Domako v. Rowe*, 475 N.W.2d 30 (Mich. 1991), the court prevented the late assertion of a physician-patient privilege, where the plaintiff had already signed releases of her medical information. The court observed, regarding state privilege rules, that:

> it is patently unfair for a party to assert a privilege during pretrial proceedings, frustrate rightful discovery by the other party, and then voluntarily waive that

privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage. Thus the rule requires that a party choose between the existing privilege and the desired testimony. The party may not have both.

*Id*. at 34 (citations and internal quotations omitted).

Distinct from the attorney-client privilege is the work product privilege. *See Regional Airport Authority of Louisville and Jefferson County*, 460 F.3d at 713. Federal Rule of Civil Procedure 26(b)(3), in relevant part, provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . ). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

In *Hickman v. Taylor*, 329 U.S. 495, 510-512 (1947), the decision eventually codified in 1970 in the above rule, the Supreme Court expounded on the harm to legal practice, as well as to clients and the interests of justice, if discovery operated to require the disclosure of an attorney's personal beliefs, mental impressions, and legal theories. The Court upheld the "general policy against invading the privacy of an attorney's course of preparation." *Id*. at 512. "[T]he work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Regional Airport Authority*, 460 F.3d at 713 (citations omitted). Unlike the attorney-client privilege, which may only be asserted by the client, both attorney and client can assert the work product privilege. *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (citation omitted).

C.

Notwithstanding the assertion of two different privileges, attorney-client privilege and work product privilege, Kreinberg little differentiates between them, although he does advance several arguments against affording these privileges to the challenged documents. He maintains that Dow Chemical waived its privileges over documents relating to advice about terminating Kreinberg and about defenses to an acquisition on the following grounds: (1) Dow Chemical selectively disclosed materials, which opened the door to related materials; (2) Dow Chemical has put its counsel's advice at issue; (3) Dow Chemical cannot temporally limit the relevant materials to prevent disclosure of documents that post-date Kreinberg's termination; and (4) a Delaware rule of law that eliminates the privilege when a corporation seeks to assert it against a former director, who received the legal communications at issue. Kreinberg further maintains that, based on *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002), Dow Chemical cannot assert these privileges to documents related to an SEC investigation.

Kreinberg contends that Dow Chemical has waived its privilege through selective disclosure. That is, because Dow Chemical released certain communications on a subject, it thereby incurred an obligation to release all communications on that same subject.

Neither the record nor an understanding of attorney-client privilege under Michigan law support this argument. The alleged waiver to which Kreinberg adverts appears to be a statement made in this Court. At a previous hearing, Dow Chemical's counsel stated that it did not assert attorney-client privilege as to materials from Wachtell Lipton's investigation into rumors about the possible purchase and the asserted involvement of Reinhard and Kreinberg in such a plan. Yet Dow Chemical did reserve claims of privilege regarding Wachtell Lipton's advice about possible defenses

to acquisition efforts. Attorney-client privilege protects communications for the purpose of obtaining legal advice. It does not protect communications of facts by the attorney to the client; it does not protect factual investigations conducted by an attorney, as those are not legal advice. *See Fruehauf*, 528 N.W.2d at 781; *Hubka*, 494 N.W.2d at 802. Thus, attorney-client privilege does not protect discovery of Wachtell Lipton's factual involvement in the events at issue, but disclosure of that factual information does not constitute a waiver.

In addition to Wachtell Lipton's involvement in investigating the alleged conduct of Reinhard and Kreinberg, attorneys from Wachtell Lipton appear to have attended board meetings and participated in telephone calls with and on behalf of Dow Chemical representatives around the time of the terminations. Despite that fact, Dow Chemical makes no reference to an expectation that it will rely on a defense of the advice of counsel. Indeed, when pressed at the hearing, Dow Chemical's counsel declined to identify anyone at Wachtell Lipton who might have provided such advice to Dow Chemical as it reached its decision to terminate Reinhard and Kreinberg. Unless counsel mispoke, no representative from Wachtell Lipton rendered legal advice to Dow Chemical about the terminations of Reinhard and Kreinberg, nor was it solicited. Accordingly, to the extent that Dow Chemical now asserts a privilege as to advice from Wachtell Lipton about the termination decisions, Dow Chemical cannot later assert a defense of advice of counsel from that firm, which is the same basis by which it now avoids discovery. *See Domako*, 475 N.W.2d at 34 (noting the "unfair[ness of] . . . assert[ing] a privilege during pretrial proceedings [that] frustrate[s] rightful discovery by the [opposing] party, and then voluntarily waiv[ing] that privilege at trial, thereby catching the opposing party unprepared, surprised, and at an extreme disadvantage").

Kreinberg also cites to a Delaware rule of law in support of his contention that Dow

Chemical cannot assert privileges as to the disputed documents. The Delaware rule of law provides that a corporation cannot assert attorney-client privilege against a former director, if the former director was a member of the board at the time that the advice was provided. *Moore Business Forms, Inc. v. Cordant Holdings Corp.* 1996 WL 307444, *4 (Del. Ch. 1994) ("Delaware case law supports the plaintiff's position that as a general matter, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure."); *Kirby v. Kirby,* 1987 WL 14862, *7 (Del.Ch. 1987) ("The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through one of its officers or directors."). The rationale for this rule is that the board of directors, in its capacity as the governing entity for a corporation, is equivalent to the corporation. Thus, a privilege proper to the corporation cannot be asserted against a person who, at the time, was himself properly representing and, indeed, in some sense, was the corporation.

Even if this Delaware rule did apply here, Kreinberg is not a director, and he has not identified any case that involves a non-director. Although he was highly placed within the organization, his role as an executive vice president did not place him on the board of directors. Consequently, despite his many years of service as an employee, the rationale that prevents the application of this privilege does not extend to him: because he was not a director, the privilege held by the corporation does not belong to him to assert. More importantly, to avoid a scenario in which certain materials are privileged as to certain claims and those same materials are not privileged as to other claims, *see* 6 Moore's Federal Practice 3d § 26.47[4] (2006), the Court is applying Michigan's law of privilege. Michigan law has no such exception to attorney-client privilege for

directors to assert against their former corporation. Accordingly, Kreinberg has not established, by relying on a Delaware rule of law not applicable to him, a basis for setting aside the attorney-client privilege asserted as to some of the challenged documents.

If the Court had concluded that an exception to or waiver of privilege applied, the timing of the alleged events would not dispose of the Court's analysis of any such waiver. For instance, the suggestion that the date of Reinhard's and Kreinberg's termination might serve as a cut-off point is unavailing. In assessing whether a waiver occurred, a court must always consider the relevance of the information at issue. *See Howe*, 487 N.W.2d at 382-383. Communications that post-date the terminations could, conceivably, shed light on conduct or decisions that occurred previously. While the timing of any such communications would be informative, a particular date, such as April 12, 2007, would not be dispositive of the inquiry. Indeed, Reinhard's and Kreinberg's counterclaims are based on conduct that allegedly occurred after that date. Further, Dow Chemical's suggestion that it might seek to introduce evidence of its compensation committee's later decisions (perhaps to imply the legitimacy of its initial conclusions) underscores the inadvisability of fixating on a particular date.

Finally, the parties' arguments have not endeavored to focus on particularized documents and the specific privilege or privileges asserted as to each of them. For instance, the parties, in their reliance on *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002), cite generally amongst the court's conclusions and do not observe that decision's separate analysis of attorney-client privilege and work product privilege. There, the Sixth Circuit ultimately determined that, once a litigant disclosed privileged information during the course of litigation adverse to the government, the "waiver [was] complete and final" and, so, the disclosed information

became available to other subsequent litigants in discovery in later proceedings. *Id*. at 307. Regarding work product privilege, the court noted that the initial disclosure must be to an adversary. *Id*. at 306.

Here, regarding the scope of privilege applicable to documents released to the SEC, attorney-client privilege is asserted as to some documents, work product privilege is asserted as to others, and both privileges are asserted to still others. While possibly persuasive as to attorney-client privilege, which is governed by state law in this litigation, the Sixth Circuit's decision *In re Columbia* is governing only as to work product privilege, notwithstanding the apparent preference for persuasive rather than governing authority manifested throughout the parties' briefs. *See* Fed. R. Evid. 501; 6 Moore's Federal Practice 3d § 26.70[7] (2006). Yet a waiver of work product privilege requires release of materials to an *adversary*. *In re Columbia*, 293 F.3d at 306. The parties' competing representations – with almost no record citation – do not permit the Court to reach any conclusion about the nature of any investigation with or by or proceedings before the SEC. Accordingly, the Court will deny without prejudice Kreinberg's motion to compel the release of documents from Wachtell Lipton that may pertain to an SEC inquiry.

To reiterate, the lack of specificity as to particular documents and particular privileges prevents the Court from providing a more detailed disposition of Kreinberg's motion to compel. For instance, certain documents appear to involve communications between Wachtell Lipton and JPMC. Absent factual information not presented to the Court or a legal theory not yet advanced, communications between a party's counsel and a third party usually do not qualify as a privileged communication. Similarly, communications between Dow Chemical and Wachtell Lipton pertaining to defenses to an unsolicited acquisition – if Dow Chemical asserts those costs as a measure of part

of its alleged damages – would arguably provide a ground for waiver of attorney-client privilege. The foregoing discussion outlines general principles, which derive from Michigan law for attorney-client privilege and from federal law for work product privilege, but without a careful explication of how the law applies to specific documents, the Court must conclude that Kreinberg has not carried his burden on his motion. The preservation of the privileges asserted by Dow Chemical, however, does not permit it to protect factual information regarding the alleged events or to rely, at a later date, on the defense of advice of counsel from Wachtell Lipton in a manner inconsistent with its assertion of privilege at this juncture.

III.

Accordingly, it is **ORDERED** that Kreinberg's motion to compel production of documents from Wachtell Lipton [dkt #141] is **DENIED WITHOUT PREJUDICE** regarding documents pertaining to the SEC investigation and **DENIED WITH PREJUDICE** as to the other documents in Wachtell Lipton's privilege logs.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 30, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 30, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS